Esterson v Spring (2025 NY Slip Op 01167)

Esterson v Spring

2025 NY Slip Op 01167

Decided on February 27, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 27, 2025

Before: Moulton, J.P., Gesmer, Mendez, Higgitt, O'Neill Levy, JJ. 

Index No. 654911/16|Appeal No. 3776|Case No. 2023-04829|

[*1]Jack Esterson et al., Plaintiffs-Counterclaim Defendants-Appellants-Respondents,
v
Harry Spring et al., Defendants-Counterclaim Plaintiffs- Respondents-Appellants.

The Linden Law Group, P.C., New York (Charles J. Kleiner of counsel), for appellants-respondents.
Dilworth Paxson, LLP, New York (Ira N. Glauber of counsel), for respondents-appellants.

Order, Supreme Court, New York County (Joel M. Cohen, J.), entered July 3, 2023, which, to the extent appealed from as limited by the briefs, and after a nonjury trial, dismissed defendants' counterclaim for contribution, dismissed, as moot, plaintiffs' causes of action for breach of contract and breach of fiduciary duty, and denied plaintiffs' request for reimbursement of attorneys' fees and other costs, unanimously affirmed, with costs.
Defendant-counterclaim plaintiff Harry Spring and plaintiffs-counterclaim defendants Jack Esterson and Pamela Jerome were the sole partners of nonparty firm Wank Adams Slavin Associates LLP (WASA). WASA received a loan from Citibank, N.A., and the three partners personally guaranteed the loan debt. In March 2015, Esterson and Jerome withdrew from WASA, transferring their ownership interest to Spring, who became WASA's sole owner. In July 2015, WASA filed a chapter 11 bankruptcy petition, triggering an event of default under the Citibank loan. Citibank demanded full payment, and in January 2016, it sued all three partners to enforce the guarantees. Before Esterton and Jerome appeared in the Citibank action, defendant-counterclaim plaintiff Harry Spring Consulting LLC (HSC) — which had been formed by Spring as a single member LLC - unilaterally purchased the loan from Citibank and paid Citibank the full amount of the loan debt in exchange for an assignment of the loan. According to Spring, he used personal funds to buy the claim from Citibank. HSC later substituted itself as plaintiff in place of Citibank. In response to HSC's substitution as plaintiff in the Citibank action, plaintiffs commenced this action against Spring and HSC, alleging that by attempting to resuscitate WASA and continuing its operations, Spring had breached the parties' agreement that WASA would cease operating. As relevant to this appeal, defendants interposed a counterclaim for contribution.
Supreme Court properly determined that defendants failed to prove their counterclaim for contribution because they did not produce evidence supporting the claim. Although the bulk of defendants' arguments are targeted at the court's fact finding and credibility determinations, contending that the dismissal was improperly based on speculation and a misunderstanding of the trial testimony, the court's findings were supported by a fair interpretation of the evidence and were not obviously incorrect (see Thoreson v Penthouse Intl., 179 AD2d 29, 31 [1st Dept 1992], affd 80 NY2d 490 [1992]). As the court found, if Spring, rather than WASA, had paid the Citibank loan with his own funds, Spring could have easily substantiated that payment by bank records. Instead, Spring attempted to offer as evidence an incomplete bank statement, which had not been produced in discovery and did not support his contention that the debt had been paid with his own funds. The court acted within its discretion in refusing to admit that document into evidence and in drawing an [*2]adverse inference from the absence of the complete and relevant documentary evidence (CPLR 3126; see e.g. Pegasus Aviation I, Inc v Varig Logistica S.A., 26 NY3d 543, 551 [2015]). For this reason alone, the court properly dismissed defendants' counterclaim for contribution.
Furthermore, Spring asserted that while the litigation was pending, a computer "ransomware virus" affected WASA's servers in October 2016, which ultimately caused the servers to fail. According to Spring, the server failure was the reason that defendants did not produce WASA's financial records. At trial, however, defendants' IT expert revealed that a copy of the database containing WASA's financial records had been made and sent to WASA's counsel in a separate matter. This fact, however, had not been previously acknowledged, nor had the material been provided to plaintiffs. As the court noted, this was a troubling admission.
Even assuming that the court had not dismissed the contribution counterclaim for lack of evidence, the evidence at trial amply supported the court's alternate holding that Spring failed to prove that he had paid a disproportionate share of the debt. A fair interpretation of the evidence supports the court's finding that, because Spring ultimately became the sole partner of WASA after Esterson and Jerome's withdrawal — a fact that he represented to the Bankruptcy Court in WASA's bankruptcy proceeding and is therefore estopped from denying — he stood to gain the entire upside of paying the Citibank loan because he was a 100% owner of WASA and plaintiffs' contribution was therefore not warranted (see Harry Spring Consulting LLC v Esterson, 199 AD3d 567, 568 [1st Dept 2021]; Reliance Group Holdings, Inc. v National Union Fire Ins. Co. of Pittsburgh, Pa., 188 AD2d 47, 57-58 [1st Dept 1993], lv dismissed in part, denied in part 82 NY2d 704 [1993]). Moreover, a fair interpretation of the evidence supports the finding that Spring's proportionate share of the Citibank loan at the time of default was 100%.
Defendants make extensive factual arguments regarding the extent to which the accounts receivable were collectible, plaintiffs' purported violations of their noncompete agreements, the amount of defendants' spending following plaintiffs' resignation, and the circumstances surroundings WASA's filing for bankruptcy. They also contend that the court improperly focused on the "imagined benefit" to Spring by continuing to run WASA (alone and without pay) to collect the receivables and to satisfy the bank, and not the benefits that plaintiffs received when defendants paid the debt owed to Citibank. However, these arguments are largely irrelevant given the parties' separation agreement, which the court properly credited and which had transferred plaintiffs' full partnership interests in WASA to Spring for no consideration.
As to plaintiffs' claims, the court properly dismissed as moot plaintiffs' affirmative claims for breach of contract and breach of fiduciary [*3]duty upon a finding that plaintiffs' claims were akin to affirmative defenses to defendants' contribution claim. As plaintiffs were found to have no liability whatsoever on the Citibank loan, their affirmative claims were properly dismissed.
Moreover, plaintiffs fail to make a clear showing that the court abused its discretion in declining to impose sanctions on defendants for their purported spoliation of evidence and failure to produce WASA's financial records, instead dismissing Spring's counterclaim for lack of evidence (see Strout v CF E 88 LLC, 213 AD3d 589, 590 [1st Dept 2023]). Although plaintiffs fault Spring for failing to turn over the copy of relevant documents that had apparently been sent to WASA's counsel in another matter, the evidence does not rule out the possibility that Spring was simply negligent in failing to maintain his computers and the relevant WASA financial records. Thus, plaintiffs did not show that Spring intentionally hid this information with a culpable state of mind (see Pegasus Aviation I, 26 NY3d at 547). THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 27, 2025